# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

UNITED STATES OF AMERICA,

v.                                                    **Case No. 3:10cr55/MCR/CJK**

CECIL ANTHONY DORTCH,

   **Defendant**.

_____/

## ORDER and
## REPORT AND RECOMMENDATION

   This matter is before the court on the defendant's motion for a new trial (doc. 127), filed pursuant to Rule 33 of the Federal Rules of Criminal Procedure. The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636. Having conducted a careful review of the record and the arguments presented, the undersigned concludes that the motion should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

   On May 18, 2010, the defendant was indicted for possession of a firearm by a convicted felon (count one), possession with intent to distribute marijuana (count two), and possession of a firearm in furtherance of a drug-trafficking offense (count three). (Doc. 1). The matter proceeded to trial, at which the defendant represented himself. On July 9, 2010, at the conclusion of a three-day jury trial, the defendant was convicted on all counts. (Doc. 57). The conviction was upheld on appeal. *See United States v. Dortch*, 696 F.3d 1104 (11th Cir. 2012). At trial, Brad Purrus, an officer with the Pensacola Police Department ("PPD"), testified that he found a .45 caliber Taurus pistol and a loaded magazine in a Girl Scout cookie box within the

front bedroom of a house owned by defendant's late mother. In that same bedroom, officers also found a Hermann Weihrauch Arminius revolver. A Savage Arms, Inc. .22 caliber rifle and a Browning .22 caliber rifle were discovered in the house's common area and back yard. The government presented evidence that the defendant lived in the front bedroom of the home in which the weapons were found.

On the third day of trial, the government called as a witness Justin Cooper, a crime scene analyst for PPD, who was designated as an expert in latent print extraction. (Doc. 111, pp. 8, 31). Cooper first described the procedures used to obtain fingerprint and DNA samples from a firearm. He then testified regarding the procedures he used to obtain fingerprint and DNA samples from the weapons found at the home in which the defendant resided. Specifically, Cooper testified that he swabbed the trigger, handle, and barrel of the .45 caliber Taurus pistol for DNA evidence, placed the swabbings in a package titled "swabbing grip," and transmitted them to the Florida Department of Law Enforcement ("FDLE") for analysis.[1] (Doc. 111, p. 11). After he swabbed the weapon for DNA, he processed it for latent fingerprints.[2] Cooper repeated the same process on the Arminius revolver–he swabbed "around all the grips" and "around the trigger guard where anybody would typically touch a gun" and submitted the swabbings to the FDLE for DNA analysis. (Doc. 111, pp. 14-15). He then processed the gun for fingerprints. Finally, Cooper swabbed the two firearms discovered in the backyard and common area of the home

---

[1] He did not swab the slide of the gun.

[2] In a PPD Laboratory Work Request completed on June 26, 2009, Cooper noted that he processed the firearms for fingerprints and forwarded the "swabbings from the grips" of these firearms to the FDLE lab for analysis. (Docs. 127-2, pp. 25-26; 131, p. 13).

for DNA and submitted the swabbings to the FDLE.[3] He also processed the weapons for fingerprints.

The FDLE lab received the DNA swabbings on July 2, 2009, and issued its findings in letters dated October 21, 2009, and January 20, 2010. (Doc. 127-2, p. 26). Jennifer Kay, a crime laboratory analyst in the biology section of FDLE, tested the swabbings for DNA. Kay was certified at trial as an expert in DNA analysis. (Doc. 111, p. 101). She testified that she received four separate swabs, each of which was marked by PPD as having come "'from the grips of a gun.'" (Doc. 111, pp. 101-02). After testing the four swabs, Kay was able to extract a DNA sample from the swab of the .45 caliber Taurus pistol which provided a "mixed profile," meaning the sample contained more than a single individual's DNA. Kay then ran the DNA profile through CODIS and received a match to the defendant's DNA.[4] After matching the DNA through CODIS, a buccal swab of the defendant's mouth was obtained for further confirmation. The defendant's DNA from the buccal swab was matched to the DNA from the .45 caliber Taurus pistol at an occurrence of 1 in 860,000,000 African-Americans.[5]

## ANALYSIS

Defendant claims the government violated his due process rights under *Giglio v. United States*, 405 U.S. 150 (1972), and *Brady v. Maryland*, 373 U.S. 83 (1963),

---

[3] On a PPD Property Record form, Cooper indicated that the swabbings from grips of the various firearms were "seized" on June 26, 2009. (Doc. 131, p. 15).

[4] CODIS is a database comprised of DNA samples, many of which are from prisoners and missing persons.

[5] The defendant's fingerprints were not found on any of the weapons.

"by causing the knowing use of perjured testimony to be presented to the jury, uncorrected, and further, by failing to disclose the evidence which would have impeached the perjured testimony." (Doc. 127-2, pp. 9-10). In particular, the defendant argues that the government solicited perjured testimony from Cooper. The defendant avers that Cooper testified at trial that he swabbed various firearms for DNA before processing the weapons for latent fingerprints when he actually dusted the weapons for fingerprints prior to swabbing them for DNA, a method that "would significantly decrease the likelihood" of procuring DNA samples from the weapons. (Doc. 127-2, p. 10). The defendant also claims that the government possessed exculpatory evidence which would have allowed him to impeach Cooper's testimony, but never disclosed the evidence to him. According to the defendant, the government disclosed only the results of the DNA swabs from the "grip" of each weapon and withheld the results of the DNA swabs from the "'trigger guard and trigger.'" (Doc. 127-2, p. 10).

Under Rule 33, a motion for a new trial must be filed within fourteen days after the verdict or within three years of the verdict if new evidence is discovered. FED. R. CRIM. P. 33(b). "'Motions for a new trial based on newly discovered evidence are highly disfavored in the Eleventh Circuit and should be granted only with great caution;'" moreover, "'[t]he defendant bears the burden of justifying a new trial.'" *U.S. v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006). Here, the defendant filed his motion for a new trial over two and a half years after the jury returned its verdict. In an effort to salvage his otherwise time-barred claim, the defendant alleges newly discovered evidence. (Doc. 127-2, pp. 1-2).

After review of the defendant's motion and accompanying pleadings, however, the undersigned cannot discern any such evidence. To the contrary, with respect to Cooper's testimony, the evidence on which the defendant bases his claim was available to the defendant prior to trial and, in fact, relied on by the parties during trial. Indeed, the defendant was present when Cooper testified and cross-examined him regarding his collection of DNA evidence from the firearms. The defendant, therefore, could have raised all of the concerns he discusses in his motion at trial on cross-examination or, at the very latest, within fourteen days of the jury's verdict.[6] Because he failed to do so, his claim regarding Cooper's testimony is now barred. With respect to exculpatory evidence, although the defendant alleges that the government withheld exculpatory DNA evidence, he has neither identified such evidence nor put forward facts to establish its existence. His motion, therefore, fails

---

[6] Defendant claims that he was unable to "put the falsehood together" during trial because:

All the documents and reports, motions and stand by lawyer all around me and the fact I had an all white jury and court room for that matter. A rule of court book and local court rules given to me by the Court to get to know. It was all I could do to try to keep up with all that was going on in the trial. I could not read all the reports and motions and rules and documents that was [sic] put on me inside of [sic] such short time.

(Doc. 128, pp. 3-4). Notably, however, the court "admonished" the defendant of the "tremendous risk of representing himself in a criminal case." (Doc. 44, p. 1). The defendant declined the court's offer to appoint substitute counsel and instead insisted on proceeding to trial with standby counsel only. (Doc. 44). Given the defendant's insistence on representing himself at trial, the defendant cannot now use the very rigors and demands (if which he was thoroughly warned) attending such representation as an excuse for failing to adequately explore all potential defenses or avenues of cross-examination.

*Case No: 3:10cr55/MCR/CJK*

on that ground as well.[7]

Accordingly, it is ORDERED:

Defendant's Motion for Leave to File Out of Time Reply/Supplemental Reply (doc. 133) is GRANTED.

And it is respectfully RECOMMENDED:

Defendant's motion for a new trial (doc. 127) be DENIED for the reasons stated herein.

At Pensacola, Florida, this 23rd day of October, 2013.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).

---

[7] On a substantive level, defendant's claims also fail. Cooper testified that he first swabbed the firearms for DNA and then dusted them for fingerprints. His testimony is consistent with Kay's testimony as well as the various PPD property records, laboratory work requests, and the FDLE DNA results defendant includes with his motion. (Doc. 127-2, pp. 23-26). Defendant's claim of undisclosed exculpatory evidence is derived from an apparent inconsistency in Cooper's labeling of the DNA swabbings' exhibit labels. Cooper's trial testimony directly refutes defendant's claim. Regardless, even if there were inconsistencies in the evidence, as alleged, such inconsistencies do not provide a basis for granting a new trial under Rule 33.